## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| I4F LICENSING N.V. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: |
| | ) | |
| v. | ) | 2:23-cv-735 |
| | ) | |
| OLLIE'S BARGAIN OUTLET, INC. | ) | *Electronically Filed* |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |
| | ) | |

## COMPLAINT

Plaintiff I4F Licensing N.V. ("i4F"), through its counsel, hereby alleges the following for its Complaint against Defendant Ollie's Bargain Outlet, Inc. ("Ollie's"):

## PARTIES

1.      Plaintiff is a business having a principal place of business at Oude Watertorenstraat 25, 3930 Hamont-Achel, Belgium.

2.      Upon information and belief, Defendant Ollie's is a Pennsylvania corporation having a business of 6295 Allentown Blvd., Harrisburg, PA 17112.

## JURSDICTION AND VENUE

3.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271 *et seq*.

4.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.

5.      This Court has personal jurisdiction over Defendant under 28 U.S.C. §1391 because Defendant has committed, and continues to commit, acts of infringement in this district, as explained in further detail below.

6.     Venue is proper under 28 U.S.C. § 1400(b) because Defendant has regular and established places of business in this judicial district and has committed, and continues to commit, acts of infringement in this judicial district.

## PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271

7.     i4F owns numerous patents, including United States Patent No. 8,978,336 entitled "Floor Panel and Floor Covering Consisting of a Plurality of Such Floor Panels" ("the '336 Patent") and United States Patent No. 10,267,046 entitled "Panel Interconnectable With Similar Panels for Forming a Covering" ("the '046 Patent"), covering locking systems for floors and other panels that i4F markets as 3L TripleLock and Click4U and licenses to third parties.  *See* Exhibits 1 and 2.  i4F licensees are required to label each box of panels with i4F's locking system with i4F L2C labels. The i4F L2C label, which is reproduced below, indicates that i4F has authorized the box of panels for manufacture and sale under a valid licensing arrangement.



8.     Additionally, i4F flooring plank licensees mark their products with i4F's patents by including the following or similar language: "THESE PRODUCTS UTILIZE PROPRIETARY 3L TRIPLELOCK AND CLICK4U TECHNOLOGY patents: www.patents-i4f.com" or "PRODUCED UNDER LICENSE OF THE PATENTS LISTED at www.patents-i4f.com".  The URLs www.patents-i4f.com and www.i4f.com/patents/ identify the '336 and '046 Patents.

9.     Upon information and belief, Ollie's is selling Accused Products, which are discussed in detail below, at numerous store locations to include, but are not limited to, 5739 Broadview Rd., Cleveland, OH 44134, 4505 Century Dr., West Mifflin, PA 15122, as well as the 4201 Walnut St. #2, McKeesport, PA 15132, 3700 William Penn Hwy #2, Monroeville, PA 15146, and 880 Butler St. Pittsburgh, PA 15223.

10.     Ollie's is manufacturing, using, importing, selling and/or offering to sell Accused Products in the United States and in this District.  The Accused Products include all floor panels made, imported, sold or offered for sale by Ollie's having a locking system as substantially described and shown herein below or having a substantially similar locking system, including, but not limited to, the FLOORbasics Lexington Hickory of vinyl plank flooring.

11.     Ollie's had actual, or constructive, knowledge of the '336 and '046 Patents and of i4F's licensing practices of the '336 and '046 Patents.  On December 9, 2021, i4F sent a letter to Ollie's regarding infringement of the '336 and '046 Patents by selling products including, without limitations, the Real Living, Rustic Living, and Pro Series products without the i4F labels.  Since this correspondence, Ollie's referred the matter to its suppliers Flooring One Source and HFC Horizon to verify that the products were labelled.  Therefore, Ollie's has demonstrated that it has fair notice of the '336 and '046 Patents.

12.     Upon information and belief, Ollie's has sold and offered to sell the Accused Products, which infringe the '336 and '046 Patents, in this District.  Ollie's continues to regularly conduct business and continues to systematically sell or offer to sell the Accused Products in this District.

13.     Therefore, Ollie's is infringing at least claims 1-17, 19-27, 29-30, 35-40, and 42-44 of the '336 Patent, and at least claims 1-11, 13-18, 20, 23-34, 36-41, 43, and 46-47 of the '046

Patent (collectively, the "Asserted Claims").  Ollie's will continue to infringe the '336 and '046

Patents unless enjoined by this Court.

14.     Photos of the Accused Products, packaging, and a representative floor panel are

presented below:



Packaging of Accused Products



Label of the Accused Products Lacking the i4F L2C Label



Installation instructions of the Accused Products



Upward Tongue Long Side Accused Products Locking System



Downward Tongue Long Side Accused Products Locking System



Upward Tongue Short Side Accused Products Locking System



Downward Tongue Short Side Accused Products Locking System



Interlocked Long Side Accused Products Locking System



Interlocked Short Side Accused Products Locking System

15. Upon information and belief, all of the Accused Products include the locking system identified and shown above in paragraph 14.

16. Claim 1 of the '336 Patent recites:

A floor panel, comprising:

a centrally located core provided with an upper side and a lower side,

at least one first resilient coupling part and second resilient coupling part connected respectively to opposite edges of the core,

which first coupling part comprises a single upward tongue, at least one upward flank lying at a distance from the upward tongue and a single upward groove formed between the upward tongue and the upward flank, wherein:

at least a part of a side of the upward tongue facing toward the upward flank extends in the direction of the normal of the upper side of the core,

at least a part of a side of the upward tongue facing toward the upward flank forms an upward aligning edge for the purpose of coupling the first coupling part to a second coupling part of an adjacent floor panel,

at least a part of a side of the upward tongue facing away from the upward flank is provided with a first locking element which is connected substantially rigidly to the upward tongue and adapted for co-action with a second locking element of a second coupling part of an adjacent floor panel,

which second coupling part comprises a single downward tongue, at least one downward flank lying at a distance from the downward tongue, and a single downward groove formed between the downward tongue and the downward flank, wherein:

at least a part of a side of the downward tongue facing toward the downward flank extends in the direction of the normal of the lower side of the core,

at least a part of a side of the downward tongue facing away from the downward flank forms a downward aligning edge for the purpose of coupling the second coupling part to a first coupling part of an adjacent floor panel,

the downward flank is provided with a second locking element which is connected substantially rigidly to the downward flank and adapted for co-action with a first locking element of a first coupling part of an adjacent floor panel,

wherein the upward groove is adapted to receive at least a part of a downward tongue of an adjacent panel, and wherein the downward groove is adapted to receive at least a part of an upward tongue of an adjacent panel.

17.     Claim 1 of the '046 Patent recites:

A panel, in particular a floor panel, interconnectable with similar panels for forming a covering, comprising:

a centrally located core provided with an upper side and a lower side, said core being provided with:

a first pair of opposite edges, comprising:

a first edge comprising a sideward tongue extending in a direction substantially parallel to the upper side of the panel, a bottom back region of said tongue being configured as a bearing region, wherein the bottom back region is located closer to the level of the upper side of the panel than a lowest part of a bottom front region,

an opposite, second edge comprising a recess for accommodating at least a part of the sideward tongue of a second panel, said recess being defined by an upper lip and a lower lip, said lower lip being provided with an upwardly protruding shoulder facing the bearing region of the sideward tongue,

the sideward tongue being designed such that locking takes place by an introduction movement into the recess of a sideward tongue of the second panel and an angling down movement about an axis parallel to the first edge, as a result of which a top side of the sideward tongue will engage the upper lip and the bearing region of the sideward tongue will be supported by and/or facing the shoulder of the lower lip, leading to locking of the panel and the second panel at the first and second edges in both a horizontal direction and a vertical direction; and

a second pair of opposite edges, comprising:

a third edge comprising a single upward tongue, at least one upward flank lying at a distance from the upward tongue and a single upward groove formed between the upward tongue and the upward flank, and wherein at least a part of a side of the upward tongue facing away from the upward flank comprises a substantially rigid first locking element, and

a fourth edge comprising a single downward tongue, at least one downward flank lying at a distance from the downward tongue, and a single downward groove formed between the downward tongue and the downward flank, and wherein the downward flank comprises a

substantially rigid, second locking element adapted for co-action with a first rigid locking element of a third edge of a third panel,

the third and fourth edges being designed such that locking takes place during angling down of the second panel at a first edge of the second panel to a second edge of the panel, wherein the fourth edge of the second panel makes a scissoring movement toward the third edge of the third panel, such that the downward tongue of the fourth edge of the second panel will be forced into the upward groove of the third edge of the third panel and the upward tongue of the third panel will be forced into the downward groove of the second panel, by deformation of the third edge and/or the fourth edge, leading to locking of adjacent panels at the third and fourth edges in both the horizontal direction and the vertical direction,

wherein at least a part of a side of the upward tongue facing toward the upward flank is inclined toward the upward flank and extends in the direction of the normal of the upper side of the core, and

wherein at least a part of a side of the downward tongue facing toward the downward flank is inclined toward the downward flank and extends in the direction of the normal of the lower side of the core.

18.    Claim 24 of the '046 Patent recites:

A panel, in particular a floor panel, interconnectable with similar panels for forming a covering, comprising:

a centrally located core provided with an upper side and a lower side, said core being provided with:

a first pair of opposite edges, comprising:

a first edge comprising a sideward tongue extending in a direction substantially parallel to the upper side of the panel, a bottom back region of said tongue being configured as a bearing region, wherein the bottom back region is located closer to the level of the upper side of the panel than a lowest part of the bottom front region,

an opposite, second edge comprising a recess for accommodating at least a part of the sideward tongue of a second panel, said recess being defined by an upper lip and a lower lip, said lower lip being provided with a upwardly protruding shoulder facing the bearing region of the sideward tongue,

the sideward tongue being designed such that locking takes place by an introduction movement into the recess of a sideward tongue of the second panel, as a result of which a top side of the sideward tongue will engage the upper lip and the bearing region of the sideward tongue will be supported by and/or facing the shoulder of the lower lip, leading to locking of adjacent panels at the first and second edges in both a horizontal direction and a vertical direction; and

a second pair of opposite edges, comprising:

a third edge comprising a single upward tongue, at least one upward flank lying at a distance from the upward tongue and a single upward groove formed between the upward tongue and the upward flank, and wherein at least a part of a side of the upward tongue facing away from the upward flank comprises a substantially rigid first locking element, and

a fourth edge comprising a single downward tongue, at least one downward flank lying at a distance from the downward tongue, and a single downward groove formed between the downward tongue and the downward flank, and wherein the downward flank comprises a substantially rigid, second locking element adapted for co-action with a first locking element of a third edge of a third panel,

the third and fourth edges being designed such that locking takes place during coupling of the second panel at a first edge to a second edge of the panel, and wherein downward tongue of the fourth edge of the second panel will be forced into the upward groove of the third edge of the third panel and the upward tongue of the third panel will be forced into the downward groove of the second panel, by deformation of the third edge and/or the fourth edge, leading to locking of adjacent panels at the third and fourth edges in both the horizontal direction and the vertical direction,

wherein at least a part of a side of the upward tongue facing toward the upward flank is inclined toward the upward flank and extends in the direction of the normal of the upper side of the core, and

wherein at least a part of a side of the downward tongue facing toward the downward flank is inclined toward the downward flank and extends in the direction of the normal of the lower side of the core.

19.     The locking system on the Accused Products include each and every element of the Asserted Claims, including claim 1 of the '336 Patent and claims 1 and 24 of the '046 Patent, as recited above.

## COUNT I: INFRINGEMENT OF THE '336 PATENT

20.     The Accused Products include a centrally located core provided with an upper side and a lower side, at least one first resilient coupling part and second resilient coupling part connected respectively to opposite edges of the core, which the first coupling part comprises a single upward tongue, at least one upward flank lying at a distance from the upward tongue and a single upward groove formed between the upward tongue and the upward flank, as recited in claim 1 of the '336 Patent and shown in the below photo:



Upward Tongue of the Accused Products Locking System

21.     The locking system on the Accused Products also includes at least a part of a side of an upward tongue facing toward an upward flank that extends in a direction of a normal of an upper side of a core, and at least a part of a side of the upward tongue facing toward the upward flank that forms an upward aligning edge for the purpose of coupling a first coupling part to a second coupling part of an adjacent floor panel, as recited in claim 1 of the '366 Patent and shown in the below photo:



Upward Tongue of the Accused Products Locking System

22.     The locking system on the Accused Products also includes at least a part of a side of the upward tongue facing away from the upward flank is provided with a locking element which is connected substantially rigidly to the upward tongue and adapted for co-action with a second locking element of a second coupling part of an adjacent floor panel, which second coupling part

comprises a single downward tongue, at least one downward flank lying at a distance from the downward tongue, and a single downward groove formed between the downward tongue and the downward flank, as recited in claim 1 of the '366 Patent and shown in the photo below:



Downward Tongue of the Accused Products Locking System

23.     The locking system on the Accused Products also includes at least a part of a side of the downward tongue facing toward the downward flank extends in the direction of the normal of the lower side of the core, and at least a part of a side of the downward tongue facing away from the downward flank forms a downward aligning edge for the purpose of coupling the second coupling part to a first coupling part of an adjacent floor panel, as recited in claim 1 of the '366 Patent and shown in the photo below:



Interlocked Accused Products Locking System

24.     The locking system on the Accused Products also includes a downward flank provided with a second locking element which is connected substantially rigidly to the downward flank and adapted for co-action with a first locking element of a first coupling part of an adjacent floor panel, wherein the upward groove is adapted to receive at least a part of a downward tongue of an adjacent panel, and wherein the downward groove is adapted to receive at least a part of an upward tongue of an adjacent panel, as recited in claim 1 of the '366 Patent and shown in the photo below:



Interlocked Accused Products Locking System

25.     The activities of Ollie's in manufacturing, using, importing, selling and/or offering to sell the Accused Products constitutes direct infringement under 35 U.S.C § 271(a).

26.     The activities of Ollie's constitutes indirect infringement under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others, including Ollie's customers and dealers, to directly infringe by offering to sell or selling the Accused Products, and others, including customers and dealers, to infringe the method claim 44 of the '336 Patent by instructing how to assemble the Accused Products.

27.     Ollie's sale and offers for sale of the Accused Products also constitute at least induced and contributory infringement of the method claim 44 of '336 Patent under 35 U.S.C. §§

271(b) and (c), respectively. Upon information and belief, Ollie's knew of the '336 Patent by way of at least i4F's licensees' marking of their products, which upon information and belief, have been sold by Ollie's. Additionally, the Accused Products are especially adapted to infringe the '336 Patent and are not staple articles or commodities of commerce having any substantial non-infringing uses. The Accused Products cannot be used without infringing the method claim 44 of the '336 Patent. Ollie's infringement has been and continues to be willful, entitling i4F to treble damages and attorney fees.

28.    i4F has been irreparably damaged and will continue to be irreparably damaged by reason of Ollie's infringement of the '336 Patent unless this Court restrains the infringing acts of Ollie's. i4F is without an adequate remedy at law.

## COUNT II: INFRINGEMENT OF THE '046 PATENT

29.    The locking system on the Accused Products includes a centrally located core provided with an upper side and a lower side, said core being provided with a first pair of edges, comprising a first edge comprising a sideward tongue extending in a direction substantially parallel to the upper side of the panel, a bottom back region of said tongue being configured as a bearing region, wherein the bottom back region is located closer to the level of the upper side of the panel than a lowest part of the bottom front region and an opposite, second edge comprising a recess for accommodating at least part of a sideward tongue of a second panel, said recess being defined by an upper lip and a lower lip, said lower lip being provided with an upwardly protruding shoulder facing the bearing region of the sideward tongue, as recited in claims 1 and 24 of the '046 Patent and shown in the photos below:



First Edge Sideward Tongue of the Accused Products Locking System



Second Edge Sideward Tongue of the Accused Products Locking System

30.    The locking system on the Accused Products also includes a sideward tongue being designed such that locking takes place by an introduction movement into the recess of a sideward tongue of the second panel and an angling down movement about an axis parallel to the first edge, as a result of which a top side of the sideward tongue will engage the upper lip and the bearing region of the sideward tongue will be supported by and/or facing the shoulder of the lower lip leading to locking of the panel and the second panel at the first and second edges in both a horizontal direction and a vertical direction, as recited in claims 1 and 24 of the '046 Patent and shown in the photo below:



First and Second Edge Interlocked Accused Products Locking System

31.     The locking system on the Accused Products also includes a second pair of opposite edges comprising a third edge comprising a single upward tongue, at least one upward flank lying at a distance from the upward tongue and a single upward groove formed between the upward tongue and the upward flank, and wherein at least a part of a side of the upward tongue facing away from the upward flank comprises a substantially rigid first locking element, and a fourth edge comprising a single downward tongue, at least one downward flank lying at a distance from the downward tongue, and a single downward groove formed between the downward tongue and the downward flank, and wherein the downward flank comprises a substantially rigid, second locking element adapted for co-action with a first rigid locking element of a third edge of a third panel, as recited in claims 1 and 24 of the '046 Patent and shown in the photos below:



Third Edge Upward Tongue of the Accused Products Locking System



Fourth Edge Downward Tongue of the Accused Products Locking System

32.     The locking system on the Accused Products also includes a third and fourth edges being designed such that locking takes place during angling down of the second panel at a first edge of the second panel to a second edge of the panel, wherein the fourth edge of the second panel makes a scissoring movement toward the third edge of the third panel, or during coupling of the second panel at a first edge to a second edge of the panel, such that the downward tongue of the fourth edge of the second panel will be forced into the upward groove of the third edge of the third panel and the upward tongue of the third panel will be forced into the downward groove of the second panel, by deformation of the third edge and/ or the fourth edge, leading to locking of adjacent panels at the third and fourth edges in both the horizontal direction and the vertical direction, as recited in claims 1 and 24 of the '046 Patent and shown in the photo below:



Third and Fourth Edge Interlocked Accused Products Locking System

33.     The locking system on the Accused Products also includes at least a part of a side of the upward tongue facing toward the upward flank is inclined toward the upward flank and extends in the direction of the normal of the upper side of the core, and wherein at least a part of a side of the downward tongue facing toward the downward flank is included toward the downward flank and extends in the direction of the normal of the lower side of the core, as recited in claims 1 and 24 of the '046 Patent and shown in the photos below:



Third Edge Upward Tongue of the Accused Products Locking System



Fourth Edge Downward Tongue of the Accused Products Locking System

34.     The activities of Ollie's in manufacturing, using, importing, selling and/or offering to sell the Accused Products constitutes direct infringement under 35 U.S.C § 271(a).

35.     The activities of Ollie's constitutes indirect infringement under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others, including Ollie's customers and dealers, to directly infringe by offering to sell or selling the Accused Products, and others, including customers and dealers, to infringe the method claim 47 of '046 Patent by instructing how to assemble the Accused Products.

36.     Ollie's sale and offers for sale of the Accused Products also constitute at least induced and contributory infringement of the method claim 47 of '046 Patent under 35 U.S.C. §§ 271(b) and (c), respectively.  Ollie's knew of the'046 Patent by way of at least i4F's licensees' marking of their products, which upon information and belief, have been sold by Ollie's, and Ollie's instructions to its customers on how to perform the method claim 47 of the '046 Patent. Additionally, the Accused Products are especially adapted to infringe the'046 Patent and are not staple articles or commodities of commerce having any substantial non-infringing uses.  The Accused Products cannot be used without infringing the method claim 47 of the '046 Patent. Ollie's infringement has been and continues to be willful, entitling i4F to treble damages and attorney fees.

37.     i4F has been irreparably damaged and will continue to be irreparably damaged by reason of Ollie's infringement of the'046 Patent unless this Court restrains the infringing acts of Ollie's.  i4F is without an adequate remedy at law.


**WHEREFORE**, i4F prays:

A.     that Ollie's, its officers, employees, agents, and those persons in active participation with them be permanently enjoined from infringing the '336 and '046 Patents;

B.     that judgment be entered finding that Ollie's infringes the '336 and '046 Patents;

C.      that Ollie's be ordered to pay damages to i4F pursuant to 35 U.S.C. § 284, including interest from the dates of infringement, resulting from Ollie's infringement of the '336 and '046 Patents;

D.      that Ollie's be ordered to pay i4F treble damages pursuant to 35 U.S.C. § 284, resulting from Ollie's continuous and willful infringement of the '336 and '046 Patents;

E.      that  i4F be awarded its costs of this action and reasonable attorneys' fees pursuant to 35 U.S.C. § 284 and 285; and

F.      that i4F be awarded such further relief as this Court may deem just and proper.

### **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury for all issues triable by a jury.

Respectfully submitted,

**THE WEBB LAW FIRM**

Dated: May 2, 2023                      s/ *John W. McIlvaine*
                                        John W. McIlvaine (PA ID No. 56,773)
                                        Anthony W. Brooks (PA ID No. 307446)
                                        One Gateway Center
                                        420 Ft. Duquesne Blvd., Suite 1200
                                        Pittsburgh, PA 15222
                                        412.471.8815
                                        412.471.4094 (fax)
                                        jmcilvaine@webblaw.com
                                        abrooks@webblaw.com
                                        *Attorneys for Plaintiff*